**7UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

JOHN GRANDINETTI JR,

                                    Plaintiff,

          vs.                                              1:23-cv-753
                                                           (ECC/DJS)

TROOPER SEAN TASHJIAN, Individually
and as an employee of the STATE OF NEW YORK,

                                    Defendant.

─────────────────────────────────

**Appearances:**

Ryanne Konan, Esq., *for Plaintiff*
Mark J. Dolan, Ass't Att'y General, *for Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff John Grandinetti Jr. filed this action pursuant to 42 U.S.C. § 1983 against Defendant Sean Tashjian alleging violations of the Fourth and Fourteenth Amendments arising out of his arrest and prosecution for controlled substance offenses.  Presently before the Court are Defendant's motion for summary judgment, Dkt. No. 25, Plaintiff's cross-motion for partial summary judgment, Dkt. No. 27, and Defendant's motion to seal, Dkt. No. 33.  The motions are fully briefed.  Dkt. Nos. 25-16, 30, 33, 36, 37.  For the following reasons, Defendant's motion for summary judgment is granted, Plaintiff's motion for partial summary judgment is denied, and Defendant's motion to seal is granted.

## I.     BACKGROUND[1]

Defendant was a member of the New York State Police Special Investigation Unit (Unit) from 2019 to 2022.  Def. SUMF ¶ 1.  In early 2021, he was assigned to an investigation of a narcotics gang operating in Hudson, New York.  *Id.* at ¶ 3.  The gang was led by a man whose street name was Trone Da Don (Don).  *Id.* at ¶ 4.  Plaintiff knew Don.  *Id.* at ¶ 5, Pl. SUMF ¶ 5. After law enforcement officers searched Don's Facebook Messenger records pursuant to a warrant, Def. SUMF ¶ 6, they monitored Don's Facebook Messenger communications "in real time" pursuant to a warrant, *id.* at ¶ 7.

Plaintiff had a Facebook account in his name (the Account), Def. SUMF at ¶ 8, and the Account did not have a photograph.[2]  Pl. SUMF ¶ 48.  Between February and July 2021, the Account and Don communicated on Facebook Messenger.[3]  Def. SUMF ¶ 9.  There were at least

---

[1] The following facts are drawn from the parties' statements of undisputed material facts and responses, (Def. SUMF), Dkt. No. 25-15; (Pl. SUMF), Dkt. No. 29, and the exhibits that the parties have submitted, to the extent that they are admissible as evidence.  Disputed facts are noted. Plaintiff's attempts to dispute facts without sufficient supporting record citations are deemed admitted pursuant to Local Rule 56.1(b).  Unless otherwise noted, citations to page numbers refer to pagination generated by ECF system.

[2] Plaintiff claims that his phone was hacked, but his record citation is to his testimony that the hacking occurred "shortly before" May 2022, and that was months after the relevant exchanges. Pl. SUMF ¶ 49; Grandinetti Deposition (Grandinetti Dep.) at 27:9–17, 58:5–8, Dkt. No. 25-2.

[3] Plaintiff attempts to deny that the Account exchanged messages with Don, stating "Plaintiff did not exchange communication with TDD on Facebook," but his record citations address whether Plaintiff himself sent the messages, not whether the Account sent the messages, and the fact is therefore deemed admitted pursuant to Local Rule 56.1(b).  Pl. SUMF ¶¶ 9–18.  In addition, given the other record evidence, no reasonable jury could conclude that these messages were not exchanged.  *See* Tashjian Decl. Exh. A (Message Log), Dkt. No. 25-5.  Defendant asserts that Plaintiff sent these messages.  Def. SUMF ¶ 9.

seven messages regarding the sale of "narcotics" and methadone between February and May.[4]  *Id.* at ¶¶ 10–16; Message Log 3–11, 14, 23–27.  There were also messages regarding stolen power tools including Don's plan to steal power tools and then give, sell, or trade them to the Account, Message Log at 32–40, 42–43, 47, and the Account's request for Don to steal tools advertised in an Amazon screenshot for delivery to "John" in Hudson, New York for $1,749.99, Dkt. No. 25-6.[5]

On July 11, 2021, Don and the Account arranged for the sale of "blues" (pills containing a controlled substance) to Don at a location in Hudson, New York.  Def. SUMF ¶¶ 18, 19; Message Log at 41–44; Tashjian Deposition at 19:15–19:19, 25:17–23, Dkt. No. 25-3.

Another investigator, who had been assigned to physical surveillance of Don, was told of the planned sale and took a photograph of Don's white vehicle and a black Jeep Wrangler positioned "side-by-side" each other one minute after the Account called Don.  Declaration of Investigator A (Inv. A Decl) ¶¶ 6, 8-9, Dkt. No. 25-10; Message Log at 44; Dkt. No. 25-11.  Later that morning, a vehicle registration search showed that the Wrangler's license plate was registered to Plaintiff.  Inv. A Decl. ¶ 10.  The investigator watched Don get out of the Wrangler and get into

---

[4] Plaintiff attempts to deny this, but his record citations address only whether Plaintiff himself sent the messages, not whether messages discussed the sale of narcotics and methadone, and it is therefore deemed admitted pursuant to Local Rule 56.1(b).  Pl. SUMF ¶¶ 10–16.

[5] Plaintiff attempts to deny this, but his record citations address only whether Plaintiff himself sent the messages, not whether the messages discussed Don's plan to steal power tools and then give, sell, or trade them to the Account is deemed admitted pursuant to Local Rule 56.1(b).  Pl. SUMF ¶ 17.

his own car. *Id.* at ¶ 11.[6]  Defendant received records regarding this surveillance. *Id.* at ¶ 12.

Almost one year later, on July 5, 2022, Defendant arrested Plaintiff at a State Police Barracks for Criminal Sale of a Controlled Substance in the Third Degree, Conspiracy in the Fourth Degree to Sell a Controlled Substance, and Conspiracy in the Fifth Degree to Commit Grand Larceny.[7]  Def. SUMF ¶ 26; Dkt. No. 25-7.  Plaintiff was arraigned and released.  Def. SUMF at ¶ 27.  The charges were later withdrawn.  *Id.* at ¶ 29.  The criminal charges against Don were also dismissed.  *See* Pl. SUMF ¶ 36.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the

---

[6] The parties dispute whether Plaintiff drove his car.  *Compare* Def. SUMF ¶ 20, *with* Pl. SUMF ¶ 21 (stating that the investigator "never saw" him "behind the steering wheel of the Jeep," and he "loaned his vehicle to family members and friends").

[7] The precise charge is unclear.  Although Plaintiff agrees that he was charged with Conspiracy in the Fifth Degree for Receiving Stolen Goods, Pl. SUMF ¶ 26, the criminal complaint states that he was charged with Conspiracy in the Fifth Degree to Commit Grand Larceny, Dkt. No. 25-7.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim") (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Further, "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)) (cleaned up).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences

5

against the party whose motion is under consideration." *Hotel Emps. & Rest. Emps. Union, Loc. 100 of New York, N.Y. & Vicinity v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (internal quotations omitted).

## III.    DISCUSSION

The Complaint alleges false arrest and malicious prosecution claims under § 1983 against Defendant in his individual and official capacities.  Dkt. No. 1.

### A.    Official Capacity Claims

Defendant seeks summary judgment on Plaintiff's claims against him in his official capacity because he is entitled to Eleventh Amendment immunity.  Defendant's Memorandum of Law (Def. Mem.) at 17, Dkt. No 25-16.  Plaintiff does not oppose this portion of the motion. Plaintiff's Memorandum of Law (Pl. Mem.) at 21, Dkt. No. 30.  Summary judgment is therefore granted for Defendant on the official capacity claims.

### B.    False Arrest

Both parties seek summary judgment on Plaintiff's false arrest claim.  Defendant argues that he had probable cause to arrest Plaintiff, and, in the alternative, he is protected by qualified immunity.  Def. Mem. at 10–15, 18–19.  Plaintiff argues that Defendant lacked probable cause (1) on the drug charge because (a) the police did not test the drugs pursuant to N.Y. Crim. Proc. Law § 715.50, and (b) the Facebook Messenger exchanges would be inadmissible at trial because they were never authenticated; and (2) on the conspiracy charges because (a) there was no agreement to sell goods or illegal drugs to a third party, and (b) no overt act was taken to further any agreement; and (3) on both charges because Defendant did not obtain an arrest warrant.  Pl. Mem. at 12–16.  Plaintiff also asserts that Defendant is not entitled to qualified immunity because "he

acted in bad faith." *Id.* at 21–22.

To establish a § 1983 claim for false arrest, a plaintiff must demonstrate that: (1) "the [o]fficers intended to confine him," (2) he was "conscious of the confinement and did not consent to it," and (3) "the confinement was not otherwise privileged." *Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018) (citing *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003)). The existence of probable cause defeats a false arrest claim. *See Kee v. City of New York*, 12 F.4th 150, 158 (2d. Cir. 2021).

"To determine whether an officer had probable cause for an arrest," courts "'examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)) (additional quotations omitted). Probable cause "depends on the totality of the circumstances." *Pringle*, 540 U.S. at 371.

"An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (quotation omitted). Probable cause does not require that this "belief that a person has committed a crime be correct or more likely true than false." *Mara v. Rilling*, 921 F.3d 48, 69 (2d Cir. 2019) (quotation omitted). "It requires only facts sufficient to establish the sort of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* (quotation omitted).

It is also "well established that a police officer aware of facts creating probable cause to

suspect a prima facie violation of a criminal statute is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2014) (quotation omitted). Additionally, evidence "need not be admissible at trial in order to support a finding of probable cause," *Stansbury v. Wertman*, 721 F.3d 84, 91 (2d Cir. 2013) (quotation omitted), and probable cause for a warrantless arrest may rely on inadmissible evidence, *see Draper v. United States*, 358 U.S. 307, 311 (1959).

Further, when "making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quotation omitted). "The determination of probable cause does not turn on whether the fellow agent's observations were accurate but on whether the arresting agent was reasonable in relying on those observations." *Id*. (cleaned up). Finally, "where law enforcement authorities are cooperating in an investigation . . . the knowledge of one is presumed shared by all." *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983)).

Police officers are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Wesby*, 583 U.S. at 63 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). An officer "is entitled to qualified immunity against a suit for false arrest if he can establish that he had arguable probable cause to arrest the plaintiff." *Garcia*, 779 F.3d at 92 (quotation omitted). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quotation omitted).

Here, there is no genuine issue of material fact as to Defendant's probable cause to arrest Plaintiff.  Defendant was aware, through reports from other investigators, that the Account was communicating with Don about selling controlled substances and stolen goods.  Defendant was also aware that Don got out of a Jeep registered to Plaintiff at the time and place arranged by Don and the Account for the sale of "blues."  *See* Message Log at 43–44 (containing an exchange where the Account asks "How many these blues you Gna [sic] want," and Don replies "12 wya [sic]," "I'm heading to hud [sic]"); Dkt. No. 25-11; Dkt. No. 25-10.  Given these facts, no reasonable juror could conclude that Defendant lacked probable cause to arrest Plaintiff for Criminal Sale of a Controlled Substance in the Third Degree.  *See* N.Y. Pen. Law §220.39(1).  In addition, even if Defendant lacked probable cause, Defendant had arguable probable cause because a reasonably competent officer would have believed that there was probable cause.

Plaintiff's additional arguments are not persuasive.  First, the testing requirement in N.Y. Crim. Proc. Law § 715.50(1)[8] does not undermine this analysis because the statue specifically states that "the failure to have an analysis made . . . shall not be deemed or construed to bar the . . . the prosecution of a case involving such drugs."  N.Y. Crim. Proc. Law § 715.50(3).  In addition, although a positive test would increase the likelihood that Plaintiff sold controlled substances, testing is not a prerequisite for probable cause for a drug arrest.  *See e.g., United States v. Goolsby*, 820 F. App'x 47, 49 (2d Cir. 2020) (summary order) (holding that probable cause existed where police smelled marijuana and defendant admitted smoking it).  Here, Defendant knew that the

---

[8] N.Y. Crim. Proc. Law § 715.50(1) states that "in every felony case involving the possession or sale of a dangerous drug, the head of the agency charged with custody of such drugs . . . shall within forty-five days after receipt thereof perform . . . an analysis of such drugs."

Account, which had coordinated what appeared to be controlled substance sales, planned a sale of "blues," and was told by another investigator that Don got out of the Jeep registered to Plaintiff at the time and place specified for the sale.

Second, probable cause may be based on evidence that may ultimately be inadmissible. *Stansbury*, 721 F.3d at 91. Third, the absence of a warrant does not establish a false arrest so long as the police office had probable cause.[9] *See Drummond v. Castro*, 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007) (stating that a "defendant police officer who arrests a person without a warrant is not liable for false arrest if the officer had [probable cause] to believe that the individual committed an offense").

Finally, Plaintiff's challenges to the conspiracy charges do not undermine probable cause. For a false arrest claim, courts "focus on the validity of the arrest, and not on the validity of each charge." *Jaegly*, 439 F.3d at 154 (emphasis omitted). In other words, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant," and "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Id.* Here, Defendant had probable cause to arrest Plaintiff for at least criminal sale of a controlled substance in the third degree (N.Y. Pen. Law §220.39(1)), and analysis of the other charges is therefore not necessary.

But even if probable cause were necessary for each charge, Defendant had probable cause to arrest Plaintiff on the conspiracy counts. First, Conspiracy to Commit Grand Larceny or Sell

---

[9] In fact, the case Plaintiff relies on for the contrary proposition, states that probable cause "would have permitted" officers to arrest the defendant "without a warrant had they encountered him in a public place." *United States v. Stokes*, 733 F.3d 438, 444 (2d Cir. 2013). The *Stokes* arrest violated the Fourth Amendment because the officer entered the defendant's motel room without a warrant. *See id.* at 443.

Narcotics does not require a third party.  *See* N.Y. Penal Law §§ 105.05, 105.10 (both using the language "agrees with one or more persons").  Second, although there is an overt act requirement for both conspiracy charges, N.Y. Penal Law § 105.20,[10] there was at least arguable probable cause to suspect that members of the conspiracies took overt acts in furtherance of the conspiracies. Specifically, the Account and Don communicated about what appeared to be controlled substance transactions and stolen goods.  Message Log 3–11, 23–27, 32–40, 42–43, 47.  Accordingly, there was probable cause, or at least arguable probable cause, on both conspiracy counts.

Defendant's motion for summary judgment on the false arrest claim is therefore granted, and Plaintiff's motion for summary judgment on that claim is denied.[11]

### C.    Malicious Prosecution

Defendant seeks summary judgment on the malicious prosecution claim because he had probable cause to arrest Defendant, Plaintiff cannot establish malice, and, in the alternative, Defendant is protected by qualified immunity.  Def. Mem. at 16–17, 18–19.  Plaintiff also seeks summary judgment on this claim because (1) there was no drug test as required for probable cause, and (2) the Facebook messenger communications were inadmissible.  Pl. Memo at 17–18.  He also argues that malice can be inferred from the lack of probable cause, and that Defendant is not protected by qualified immunity because he did not have even arguable probable cause for the same reasons as for the false arrest claim.  Pl. Mem. at 18, 21–22.

To establish a malicious prosecution claim, a plaintiff must prove "(1) the initiation or

---

[10] Under N.Y. Penal Law § 105.20, criminal liability for a conspiracy offense requires an "overt act . . . to have been committed by one of the conspirators in furtherance of the conspiracy."

[11] Even if Defendant's motion were denied, Plaintiff's would also be denied because, viewing the facts in the light most favorable to Defendant, Plaintiff committed the crimes of arrest.

11

continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quotation omitted).

Probable cause to commence the proceeding must be shown for each crime charged, and so "should not be conflated with probable cause to arrest." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021) (citing *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999)). Probable cause to prosecute may not rely on evidence obtained in violation of an accused's rights "that 'would clearly not be admissible.'" *Penree v. City of Utica, New York*, No. 6:13-cv-01323 (MAD/ATB), 2016 WL 915252, at *18 (N.D.N.Y. Mar. 4, 2016), (quoting *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003) *aff'd in part, appeal dismissed in part sub nom. Penree by Penree v. City of Utica, New York*, 694 F. App'x 30 (2d Cir. 2017).

The "existence of probable cause is a complete defense to a malicious prosecution claim." *Cornelio v. Connecticut*, 32 F.4th 160, 178–79 (2d Cir. 2022). "'[E]ven when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. In order for probable cause to dissipate, the groundless nature of the charge must be made apparent by the discovery of some intervening fact.'" *Alberty v. Hunter*, 144 F.4th 408, 418 (2d Cir. 2025) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)). The same analysis applies if there was arguable probable cause. *Bornschein v. Herman*, 304 F. Supp. 3d 296, 303 (N.D.N.Y. 2018) (noting that an "officer is entitled to qualified immunity on claims of false arrest and malicious prosecution where he had arguable probable cause to arrest or prosecute") (internal quotations and citations omitted).

As explained above, there was probable cause or arguable probable cause for each charged crime here, and Plaintiff has not produced any intervening fact that would negate probable cause. Moreover, the probable cause determination did not rely on any evidence that was clearly inadmissible under the exclusionary rule. Finally, as addressed in the false arrest analysis above, Plaintiff's arguments regarding probable cause are not persuasive, and malice therefore cannot be inferred.

Defendant's motion for summary judgment on the malicious prosecution claim is therefore granted because Plaintiff cannot satisfy the elements as a matter of law and, in the alternative, Defendant is entitled to qualified immunity because there is arguable probable cause. Plaintiff's motion for partial summary judgment on this claim is therefore denied.[12]

Accordingly, Defendant's motion for summary judgment is granted, and Plaintiff's cross-motion for partial summary judgment is denied.

### D.    Motion to Seal

Defendant filed an unopposed motion to seal the unredacted versions of several documents filed with his motion for summary judgment. The unredacted versions of the documents contain the names of undercover investigators and Don's legal name.

Rule 5.3 of the Local Rules of Practice for the Northern District of New York requires a "party seeking to have a document, a portion of a document, a party or an entire case sealed bears the burden of filing an application setting forth the reason(s) that the referenced material should be sealed under the governing legal standard." Courts in the Second Circuit use a three-step

---

[12] Even if Defendant's motion were denied, Plaintiff's motion would also be denied because, viewing the facts in the light most favorable to Defendant, not only was there probable cause to prosecute, but Plaintiff committed the crimes of which he was accused.

process to determine whether a document may be sealed. *See Lugosch v. Pyramid Corporation of Onondaga County*, 435 F.3d 110, 119–20 (2d Cir. 2006). First, the court must determine whether the documents are "judicial documents" to which a presumption of access attaches. *Id.* at 119. A "judicial document" is a document which is "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). Second, if the subject documents are judicial documents, the court must then determine the weight of presumption of access. *Lugosch*, 435 F.3d at 119. The presumption of access is stronger when the document at issue involves the adjudication of the litigants' substantive rights. *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). The presumption weakens "where the filing with the court is unusual or generally under seal." *Id.* at 1050. Third, the court balances "competing considerations" against the weight of presumption of access. *Lugosch*, 435 F.3d at 120. Such considerations include "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Amodeo*, 71 F.3d at 1051.

Here, the documents are judicial documents because they were submitted in support of a motion for summary judgment, and there is a strong presumption of access. *See Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019) (holding district court erred when if did not "give proper weight to the presumption of access that attaches to documents filed in connection with summary judgment motions"). As to Defendant's request to seal the identities of undercover investigators in the Unit, the articulated interests—that public access poses a security risk to the officers given the sensitive nature of their work, Dkt. No. 33 at 2— outweigh even the strong presumption of access. *Amodeo,* 71 F.3d at 1050–51. As to Defendant's request to protect Don's name, the articulated interest is Don's privacy interest. Although Don was charged with conspiracy, the charges were later

14

dismissed.  Given that the charges were dismissed, Don is not a party to this lawsuit, and Don's identity has no relevance to the analysis of the motions for summary judgment, Don's privacy interest outweighs the strong presumption of access.

As a result,  Defendant's motion to seal is granted.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's cross-motion for partial summary judgment pursuant to Rule 56, Dkt. No. 27, is **DENIED**; it is further

**ORDERED** that Defendant's motion for summary judgment pursuant to Rule 56, Dkt. No. 25, is **GRANTED**; it is further

**ORDERED** that Defendant's motion to seal. Dkt. No. 33, is **GRANTED**, and the unredacted copies of the following motion documents shall be filed under seal:

(1) Notice of Motion [ECF No. 25];

(2) John Grandinetti, Jr., deposition transcript [ECF No. 25-2];

(3) Sean Tashjian deposition transcript [ECF No. 25-3];

(4) Declaration of Sean Tashjian [ECF No. 25-4];

(5) Tashjian Declaration Exhibit A [ECF No. 25-5];

(6) Tashjian Declaration Exhibit b [ECF No. 25-6];

(7) Investigator Declaration [ECF No. 25-10];

(8) Investigator Declaration Exhibit A [ECF No. 25-11];

(9) Defendant's Statement Pursuant to Rule 56.1(a) [ECF No. 25-15];

(10) Defendant's Memorandum of Law [ECF No. 25-16]; and it is further

**ORDERED** that the Clerk is respectfully directed to **CLOSE** the case; and it is further

**ORDERED** that the Clerk shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

Dated: September 17, 2025

Elizabeth C. Coombe
U.S. District Judge